**Affirmed as Modified and Opinion Filed December 8, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-16-01408-CR
_____

### RICKY ALLEN DYISE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1654228-M**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Boatright
Opinion by Justice Francis

After a jury convicted Ricky Allen Dyise of retaliation for threatening to assault a police officer who had arrested him, the trial court assessed punishment at ten years in prison, suspended for six years' community supervision, and a $1,000 fine. In a single issue, appellant contends he received ineffective assistance of counsel. For reasons discussed below, we overrule this issue. On our own motion, we modify the trial court's judgment to reflect the trial court assessed punishment, which included a fine. We affirm the judgment as modified.

Appellant is homeless and lives on the streets of Dallas. Police Sgt. Ross Stinson was assigned to the Central Business District, an area of downtown Dallas with a homeless population. Stinson was on patrol on April 23, 2016 when he saw appellant asleep on the

sidewalk and "jostled" his foot to awaken him. He asked if appellant was okay and told him to go somewhere else to sleep. After complaining, appellant walked away but then returned.

Officer Brad Hance was at the scene with Stinson. Hance checked appellant's ID and discovered three outstanding warrants for public intoxication. When Stinson told appellant he was being arrested on warrants, appellant began walking away. Appellant became irate and "balled his fist." To deescalate the situation, Stinson pulled out his Taser and told appellant again that he was under arrest. The officers were then able to handcuff appellant.

Hance transported appellant to the City Detention Center. During the drive, Hance said appellant was "very upset" and "very loud" and said, several times, that if Stinson had tased him, appellant would have killed him. Appellant also said that if Stinson did not "quit fucking with people" in that area, he was "going to get killed." Once they arrived at the CDC, appellant saw Stinson and loudly said if "you pull a Taser at me again, I'm gonna shoot you in the head."

Sgt. Timothy Parker of the Dallas Marshal's Office was on duty at the CDC when appellant was brought in. Appellant was irate, screaming, and perspiring. Appellant was looking over his shoulder and making statements to Officer Hance "to the effect that mother - - needs to watch out; somebody's going to kill him; if he'd hit me, I'd - - I'd shot him." Parker subsequently learned appellant was referring to Stinson, who was in the back writing his arrest report. Appellant stood out to Parker because, unlike many of the arrestees who went through the CDC and made threats, appellant did not appear to be drunk or high. Rather, Parker said appellant was "just extremely violent" and was "grunting" and "snorting" and using his head to "punctuate what he was saying."

When Stinson finished making his report and walked out of the back of the building, Parker and Hance told him about the threats appellant had been making. Although he was concerned, Stinson said he decided to take the matter "under advisement" and, instead of

arresting appellant, wrote up a bulletin about appellant to give a "heads up" to other officers who might come in contact with him.

Five days later, on April 28, Stinson was driving through the same downtown neighborhood with his car windows down when he saw someone staring at him from a crowd of people. He realized it was appellant. While staring at Stinson, appellant said, "I'm going to fuck you up," and took a "combative stance" with his fists balled up. Stinson recalled the previous threats and was also concerned that appellant's willingness to fight a police officer might lead to his harming a random citizen. So, Stinson stopped and told appellant to come over and place his hands on his vehicle. Appellant refused. Appellant began to shed his clothes, which Stinson believed indicated appellant was preparing for a street fight. Stinson pulled his Taser and called for backup. Ultimately, other officers arrived and appellant was arrested.

Stinson said appellant made threats against him and his family, saying he would kill anybody Stinson loved and "there's nothing safe." According to Stinson, appellant said he was going to kill him and that "you're going to get yours." What particularly concerned Stinson was appellant's statement, "It's not a threat, it's a promise." Stinson was concerned because he and his wife lived in the neighborhood and were frequently in that area. A recording of appellant after he had been restrained was admitted into evidence. On the recording, appellant can be heard talking about the Taser. When the officer asked if he was making threats, appellant responds, "I'm not making no threats; that's a promise." Minutes later, he repeatedly tells the officers standing around him, "Y'all are not going to shock me and get away with it—ever."

On redirect, the trial court allowed Stinson to testify that appellant's criminal background showed appellant had threatened and committed violent crimes in the past. When asked about those offenses, Stinson said he believed there was one retaliation and "like an agg assault." The

trial court determined appellant's counsel opened the door to this evidence by asking Stinson what specifically caused him to fear appellant.

Appellant testified he did not remember interacting with Stinson during the April 23 incident and did not remember anyone pulling a Taser. He did remember Stinson from the April 28 incident. Appellant said he was walking down the street and could feel someone following behind him in a car. When he looked back, he saw Stinson and said, "What the ef are you looking at." He believed Stinson misheard this statement to be, "I'm going to fuck you up."

Appellant denied trying to provoke a fight that day and said his fists were balled up because he was bracing for being tased. At one point, he testified he normally did not get in "this much trouble," which prompted the State to argue appellant had opened the door to prior criminal convictions. The trial court agreed and allowed the jury to hear evidence that appellant had a protective order issued against him and had 2008 convictions for interfering with public duties and two criminal trespasses, all involving a former girlfriend, as well as convictions in 2000 for theft and criminal trespass. Appellant denied making any threats to kill Stinson or his family and said he harbored no ill will.

In his sole issue, appellant contends counsel provided ineffective assistance. Appellant complains defense counsel either "opened the door" or failed to object to the introduction of extraneous offense and bad character evidence, failed to object to the State's argument that he opened the door to extraneous offenses, and failed to investigate appellant's prior offenses listed in the State's notice of intent to introduce evidence of extraneous offenses.

A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving

such a serious allegation. *Id*. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Id*.

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142.

We must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Id*. To find counsel ineffective, counsel's deficiency must be affirmatively demonstrated in the record, and we must not engage in retrospective speculation. *Id*. When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id*.

The court of criminal appeals has made clear that, in most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Further, counsel should ordinarily be accorded the opportunity to explain his actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Because the reasonableness of trial counsel's choices often involve facts that do not appear in the appellate record, an application for writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Here, appellant filed a motion for new trial but did not raise a complaint of ineffective assistance of counsel; consequently, the record before us provides no explanation for counsel's actions or omissions. From this record, one could conclude there were legitimate and professionally sound reasons for counsel's conduct or one could speculate that there were not. And, trial counsel has not been given an opportunity to explain. Under these circumstances, we cannot conclude appellant met the requirements of *Strickland*. We overrule the sole issue.

Although neither party has raised the issue, our review of the record reveals two errors in the judgment. The judgment shows the jury assessed punishment and it does not reflect a fine. The reporter's record, however, shows the trial court assessed punishment, which included a $1,000 fine.[1] We have authority to correct a judgment below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the judgment to reflect the trial court assessed punishment, which included a $1000 fine.

We affirm the trial court's judgment as modified.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
161408F.U05

---

[1] Acknowledging appellant had no money, the trial court allowed appellant's back time "to take care of the fine and all court cost."



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RICKY ALLEN DYISE, Appellant

No. 05-16-01408-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas

Trial Court Cause No. F-1654228-M.

Opinion delivered by Justice Francis; Justices Evans and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect the trial court assessed punishment and imposed a $1,000 fine.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered December 8, 2017.